UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DZHOKHAR GUTSIEV,<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE, et al.,<br><br>Respondents. | Case No.:  26-CV-2575 JAO (AHG)<br><br>**ORDER GRANTING IN PART WRIT OF HABEAS CORPUS AND DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>(ECF No. 1) |

Presently before the Court is Petitioner Dzhokhar Gutsiev's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, ECF No. 1, and Petitioner's Motion for a Temporary Restraining Order ("TRO Motion"), ECF No. 4.  Also before the Court is Respondents Todd Blanche's (Acting Attorney General of the United States); Markwayne Mullin's (Secretary of the U.S. Department of Homeland Security); Todd M. Lyons' (Acting Director Immigration & Customs Enforcement); Rodney S. Scott's (Commissioner of U.S. Customs and Border Protection); Michael W. Banks' (Chief of the United States Border Patrol); and Gregory Bovino's (Chief Patrol Agent of the El Centro Sector, U.S. Border Patrol) (collectively, "Respondents" or the "Government") Return to Petition, ECF No. 8.

For the reasons set forth below, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus on due process grounds and **DENIES** Petitioner's TRO Motion as moot.

## BACKGROUND

Petitioner, a citizen of the Russian Federation, entered the United States at the southern border on May 29, 2022, requesting asylum.  *See* ECF No. 1 at 3.  Petitioner was paroled and released into the United States on May 30, 2022.  *See id.*  On June 3, 2022, a United States Citizenship and Immigration Services ("USCIS") asylum officer found that Petitioner had a credible fear of returning to Russia and a significant possibility that he could establish asylum in the United States.  *See id.*

Three days later, Immigration and Customs Enforcement ("ICE") initiated removal proceedings against him, charging him as an arriving alien.  *See id.*  Petitioner hired an attorney and participated in removal proceedings, timely filing his application for asylum with the Executive Office of Immigration Review.  *See id.* at 11.  On April 20, 2026, forty-six months after his parole into the United States, Petitioner was "abruptly and inexplicably" detained by the Department of Homeland Security ("DHS") while traveling in the Imperial County, California area for work.  *Id.* at 3, 11.  During the time Petitioner lived in the United States, Petitioner received work authorization, engaged in gainful employment, had no criminal history, and "was a productive and valuable member of our community."  *Id.*

According to Petitioner's TRO Motion, he was last located at the Imperial Regional Detention Facility.  *See* ECF No. 4 at 5.  Petitioner argues that he is entitled to immediate release from custody because Respondents violated his due process rights by revoking his parole without notice or an opportunity to be heard.  ECF No. 1 at 3–4.  In the alternative, Petitioner argues that an Immigration Judge conduct an individualized bond hearing within 5 days.  *Id.*  Petitioner's TRO Motion seeks to enjoin Respondents from transferring him out of this judicial district during the pendency of this Petition.  ECF No. 4 at 5.

26-CV-2575 JAO (AHG)

Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225, but nonetheless acknowledge that courts in this District have repeatedly reached the opposite conclusion under similar facts.  ECF No. 8 at 2.  Thus, Respondents do "not oppose the petition to the extent it seeks a bond hearing under 1226(a), and it otherwise defers to the Court on the appropriate relief."  *Id.*  Respondents request that any order directing a bond hearing under 1226(a) provide 14 days from issuance to hold such bond hearing.  *See id.*

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241.  *See* 28 U.S.C. § 2241(a).  The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals.  *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)).  However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention— federal habeas corpus jurisdiction remains in the district court.  *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

Petitioner argues that the summary revocation of his parole without justification or consideration of his individualized circumstances violates the Due Process Clause.  *See* ECF No. 1 at 23.  The Court agrees.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*,

26-CV-2575 JAO (AHG)

533 U.S. 678, 693 (9th Cir. 2001).  "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).  The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (citations omitted).  Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).  "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he] has a protected liberty interest in remaining out of custody." *Id.* at *3 (citing *Romero v. Kaiser*, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Upon arrival, Petitioner was interviewed and released on humanitarian parole. ECF No. 1 at 11.  Petitioner has complied with all conditions of his release. *Id.* Petitioner has work authorization, has maintained stable residence in the community for almost four years, and has applied for asylum. *Id.*  Petitioner has a protected liberty interest in remaining out of custody. *See, e.g.*, *Pinchi*, 2025 WL 2084921, at *4 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."); *Noori*, 2025 WL 2800149, at *10 ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed

26-CV-2575 JAO (AHG)

due process before removal."); *Matute v. Wofford*, 2025 WL 2817795, at \*5 (E.D. Cal. Oct. 3, 2025) (finding petitioner had a protected liberty interest in his release).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Matthews* factors. *See Matthews*, 424 U.S. at 335. Courts must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The Court finds that all three factors support a finding that the Government's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his conditional parole. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Petitioner has an interest in remaining in his community and continuing the process of seeking asylum. *See Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life.").

Second, the risk of an erroneous deprivation of such interest is high because Petitioner's parole was revoked without providing him a reason for revocation or giving him an opportunity to be heard. ECF No. 1 at 10–12. "Where, as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to

26-CV-2575 JAO (AHG)

determine whether there is any valid basis for [his] detention." *Pinchi*, 2025 WL 2084921, at *5 (quoting *Singh v. Andrews*, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)) (cleaned up).  Since DHS's initial determination that Petitioner should be paroled, there is no evidence that their determination has changed.  *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.").  Petitioner has no criminal record, has not been arrested or otherwise in criminal trouble, has work authorization, and is working towards asylum status.  ECF No. 1 at 10.  "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Saravia*, 280 F. Supp. 3d at 1176.  "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk[.]" *Id.*

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low."  *See Pinchi*, 2025 WL 2084921, at *5; *Matute*, 2025 WL 2817795, at *6; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").  Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing.  *See generally* ECF No. 5.

Therefore, because Respondents detained Petitioner by revoking his parole in violation of the Due Process Clause, his detention is unlawful.  *See, e.g.*, *Navarro Sanchez*, 2025 WL 2770629, at *5 (granting a writ of habeas corpus releasing petitioner from custody to the conditions of her preexisting parole on due process grounds).[1]

---

[1] The Court need not address Petitioner's claim arising under the APA because the Petition can be resolved on due process grounds.  However, the Court notes that other courts have found violations of the APA based on similar grounds.  *See, e.g.*, *Navarro*

26-CV-2575 JAO (AHG)

**CONCLUSION**

Based on the foregoing, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) on due process grounds and **DENIES** Petitioner's TRO Motion (ECF No. 4) as moot.  The Court **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of his preexisting parole.  The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of his parole and a hearing before a neutral decision maker to determine whether detention is warranted.  The Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.  *See, e.g.*, *Matute*, 2025 WL 2817795, at *8; *Pinchi*, 2025 WL 2084921, at *5; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1097 (E.D. Cal. 2025); *Martinez Hernandez v. Andrews*, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025); *Isaev, v. LaRose, et al.*, 2026 WL 1162758, at *3 (S.D. Cal. Apr. 29, 2026).  The Parties are **ORDERED** to file a Joint Status Report by <u>May 12, 2026</u>, confirming that Petitioner has been released.

**IT IS SO ORDERED.**

Dated:  May 5, 2026



Jill A. Otake
United States District Judge

---

*Sanchez*, 2025 WL 2770629, at *4 (finding revocation of petitioner's parole arbitrary and capricious because respondents did not state any reasons for the revocation); *Noori*, 2025 WL 2800149, at *3 ("Petitioner's parole was revoked without an individualized determination or provided reasoning, which violated the APA.").  Similarly, the Court does not need to address Petitioner's Immigration and Nationality Act claim.